1
2
3
4

NATHAN SIEGEL (*pro hac vice* pending)
  nathansiegel@dwt.com
DAVIS WRIGHT TREMAINE LLP
1251 Avenue of the Americas, 21st Floor
New York, NY 10020
Telephone: (212) 489-8230
Fax: (212) 489-8340

5
6
7
8

CYDNEY SWOFFORD FREEMAN (State Bar No. 315766)
  cydneyfreeman@dwt.com
DAVIS WRIGHT TREMAINE LLP
350 South Grand Avenue, 27th Floor
Los Angeles, California 90017-3847
Telephone: (213) 633-6800
Fax: (213) 633-6899

9
10
11
12

SARAH E. BURNS (State Bar No. 324466)
  sarahburns@dwt.com
DAVIS WRIGHT TREMAINE LLP
50 California Street, Suite 2300
San Francisco, California 94111-6533
Telephone: (415) 276-6552
Fax: (415) 489-9052

13
14

Attorneys for Defendants
ESPN, INC. and XUAN THAI

15
16

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA**

17

TROY TAYLOR,

18

            Plaintiff,

19

        v.

20

ESPN INC. and XUAN THAI,

21

            Defendants.

22
23
24

Case No. 5:25-cv-06384-VKD

**DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES**

**[PUBLIC REDACTED VERSION]**

Hearing Date:  December 2, 2025
Time:              10:00 a.m.
Courtroom:      2

Action Filed:  July 30, 2025

25
26
27
28

MOTION TO DISMISS
Case No. 5:25-cv-06384-VKD

DAVIS WRIGHT TREMAINE LLP
350 S. GRAND AVE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90017-3847
(213) 633-6800
Fax: (213) 633-6899

TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on December 2, 2025, at 10:00 a.m., or as soon thereafter as this matter may be heard in Courtroom 2 of the above-entitled court, located at 280 South 1st Street, San Jose, California 95113, Defendants ESPN, Inc. ("ESPN") and Xuan Thai (collectively, "Defendants") will and hereby do move this Court, pursuant to Federal Rule of Civil Procedure 12(b)(6), for an order dismissing the Complaint of plaintiff Troy Taylor with prejudice.[1]

Plaintiff asserts a single cause of action for defamation arising from the content of four news articles published on the ESPN.com website and a related Instagram post. All of the articles report on two investigations into Plaintiff's alleged mistreatment of staff while he was head football coach at Stanford University ("the Articles"). This Motion is made on the grounds that the case should be dismissed because Plaintiff fails to state a claim upon which relief can be granted. In particular:

1. The Complaint fails to identify any actionable defamatory statement or implication in any of Articles. *See* Memorandum, Section IV.A. None of the referenced statements are materially false, and the Articles are not reasonably susceptible to Plaintiff's strained attempt to allege a libel-by-implication claim. *See* Section IV.B.

2. Plaintiff's entire Complaint fails under the First Amendment because he is a public figure, and therefore is required to plead facts that can plausibly establish that any allegedly defamatory statement was published with constitutional actual malice. Because Plaintiff has not met and cannot meet this strict pleading burden with respect to any of the statements at issue, he fails to state a claim. *See* Memorandum, Section IV.C.

For each of these reasons, this Court should grant Defendants' Motion in its entirety and dismiss Plaintiff's Complaint with prejudice.

---

[1] Defendants concurrently are filing a Special Motion to Strike Plaintiff's Complaint pursuant to California Code of Civil Procedure 425.16 ("Anti-SLAPP Motion").

MOTION TO DISMISS
Case No. 5:25-cv-06384-VKD

1

DAVIS WRIGHT TREMAINE LLP
350 S. GRAND AVE, 27TH  FLOOR
LOS ANGELES, CALIFORNIA 90017-3847
(213) 633-6800
Fax: (213) 633-6899

1    This Motion is based on this Notice; on the attached Memorandum of Points and

2  Authorities; on the concurrently-filed Request for Judicial Notice and Declaration of Cydney

3  Swofford Freeman ("Freeman Decl.") with Exhibits 1-5; on any other matters that this Court

4  may take judicial notice; on all pleadings, files and records in this action; and on such argument

5  as may be received by this Court at the hearing on this Motion.

6

7  DATED: October 3, 2025                    DAVIS WRIGHT TREMAINE LLP
                                             NATHAN SIEGEL (*pro hac vice* pending)
8                                            CYDNEY SWOFFORD FREEMAN
                                             SARAH E. BURNS

9

10                                           By: /s/     *Cydney Swofford Freeman*
                                                     Cydney Swofford Freeman

11                                           Attorneys for Defendants
                                             ESPN, INC. AND XUAN THAI

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

2

MOTION TO DISMISS
Case No. 5:25-cv-06384-VKD

DAVIS WRIGHT TREMAINE LLP
350 S. GRAND AVE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90017-3847
(213) 633-6800
Fax: (213) 633-6899

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ................................................................................................. 1

II.     STATEMENT OF FACTS .................................................................................... 2

    A.      The Stanford Investigations ....................................................................... 2

        1.      The 2023 Investigation .................................................................... 2

        2.      The 2024 Investigation .................................................................... 4

    B.      The ESPN Articles and Column ................................................................. 7

III.    LEGAL STANDARD ........................................................................................... 8

IV.     PLAINTIFF'S CLAIMS FAIL AS A MATTER OF LAW ................................. 9

    A.      The Allegedly Libelous Statements Are Substantially True. ................... 10

        1.      The First Challenged Statement Is Substantially True ............... 11

        2.      The Second Challenged Statement Is Substantially True ........... 13

        1.      The Third Challenged Statement Is Substantially True ............. 14

        2.      The Fourth Challenged Statement Also Is True ......................... 15

    B.      The Alleged Defamatory Implications Are Not Actionable. ................... 16

    C.      The Complaint Fails To Plausibly Plead Actual Malice. ........................ 19

V.      CONCLUSION .................................................................................................. 24

DAVIS WRIGHT TREMAINE LLP
350 S. GRAND AVE, 27TH  FLOOR
LOS ANGELES, CALIFORNIA 90017-3847
(213) 633-6800
Fax: (213) 633-6899

# TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ............................................................................. 8, 21

*Balistreri v. Pacifica Police Dep't,*
    901 F.2d 696 (9th Cir. 1988) ................................................................. 8

*Balzaga v. Fox News Network, LLC,*
    173 Cal. App. 4th 1325 (2009) ......................................................... 12, 13

*Barker v. Fox & Assocs.,*
    240 Cal. App. 4th 333 (2015) ............................................................. 12

*Barry v. Time, Inc.,*
    584 F. Supp. 1110 (N.D. Cal. 1984) .................................................. 21

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007) ............................................................................ 8

*Biro v. Conde Nast,*
    963 F. Supp. 2d 255 (S.D.N.Y. 2013), *aff'd*, 622 F. App'x 67 (2d Cir. 2015) ............... 20, 21

*Bose Corp. v. Consumers Union of U.S., Inc.,*
    466 U.S. 485 (1984) ....................................................................... 21, 22

*Brewer v. Memphis Publ'g Co.,*
    626 F.2d 1238 (5th Cir. 1980) ........................................................... 20

*Cabello-Rondon v. Dow Jones & Co.,*
    720 F. App'x 87 (2d Cir. 2018) ......................................................... 22

*CACI Premier Tech. v. Rhodes,*
    536 F.3d 280 (4th Cir. 2008) ............................................................. 22

*Campanelli v. Regents of Univ. of Cal.,*
    44 Cal. App. 4th 572 (1996) .............................................................. 11

*Carver v. Bonds,*
    135 Cal. App. 4th 328 (2005) ......................................................... 10, 14

*Chapin v. Knight-Ridder,*
    993 F.2d 1087 (4th Cir. 1993) ........................................................... 17

*Chuy v. Phila. Eagles Football Club,*
    431 F. Supp. 254 (E.D. Pa. 1977) ...................................................... 20

*Colt v. Freedom Commc'ns, Inc.,*
    109 Cal. App. 4th 1551 (2003) .......................................................... 13

MOTION TO DISMISS
Case No. 5:25-cv-06384-VKD

DAVIS WRIGHT TREMAINE LLP
350 S. GRAND AVE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90017-3847
(213) 633-6800
Fax: (213) 633-6899

*Curtis Publishing Co. v. Butts*,
388 U.S. 130 (1967) ........................................................................................ 20

*Eminence Cap., LLC v. Aspeon, Inc.*,
316 F.3d 1048 (9th Cir. 2003) ......................................................................... 9

*Falls v Sporting News Publ'g Co.*,
714 F. Supp. 843 (E.D. Mich. 1989) ............................................................... 20

*Forsher v. Bugliosi*,
26 Cal. 3d 792 (1980) ..................................................................................... 17

*Gallagher v. Philipps*,
563 F. Supp. 3d 1048 (S.D. Cal. 2021) ........................................................... 14

*Gertz v. Robert Welch, Inc.*,
418 U.S. 323 (1974) ........................................................................................ 19

*Gilbert v. Sykes*,
147 Cal. App. 4th 13 (2007) ............................................................................ 10

*Goldberg v. TeachBK, Inc.*,
2025 WL 296143 (N.D. Cal. Jan. 24, 2025) .................................................... 19

*Hal Roach Studios, Inc. v. Richard Feiner & Co.*,
896 F.2d 1542 (9th Cir. 1989) ......................................................................... 8

*J-M Mfg. Co. v. Phillips & Cohen LLP*,
247 Cal. App. 4th 87 (2016) ............................................................................ 12

*Jackson v. Mayweather*,
10 Cal. App. 5th 1240 (2017), *as modified* (Apr. 19, 2017) ........................... 10

*James v. San Jose Mercury News, Inc.*,
17 Cal. App. 4th 1 (1993)................................................................................. 15

*Jankovic v. Int'l Crisis Grp.*,
822 F.3d 576 (D.C. Cir. 2016) ......................................................................... 23

*Kahl v. Bureau of Nat'l Affs.*,
856 F.3d 106 (D.C. Cir. 2017) ......................................................................... 22

*Khoja v. Orexigen Therapeutics, Inc.*,
899 F.3d 988 (9th Cir. 2018)............................................................................ 5

*Lazy Y Ranch Ltd. v. Behrens*,
546 F.3d 580 (9th Cir. 2008) ........................................................................... 10

*Lee v. City of Los Angeles*,
250 F.3d 668 (9th Cir. 2001),........................................................................... 8

iii

DAVIS WRIGHT TREMAINE LLP
350 S. GRAND AVE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90017-3847
(213) 633-6800
Fax: (213) 633-6899

*Locricchio v. Evening News Ass'n,*
    476 N.W.2d 112 (Mich. 1991) ................................................................................. 17

*Makaeff v. Trump Univ., LLC,*
    715 F.3d 254 (9th Cir. 2013) ................................................................................. 19

*Manzari v. Assoc. Newspapers Ltd.,*
    830 F.3d 881 (9th Cir. 2016) ................................................................................. 19

*Masson v. New Yorker Mag., Inc.,*
    501 U.S. 496 (1991) ............................................................................................... 16

*McCafferty v. Newsweek Media Grp.,*
    955 F.3d 352 (3d Cir. 2020) .................................................................................. 23

*McGarry v. Univ. of San Diego,*
    154 Cal. App. 4th 97 (2007) ............................................................................ 20, 21

*Michel v. NYP Holdings, Inc.,*
    816 F.3d 686 (11th Cir. 2016) .......................................................................... 21, 23

*Monterey Plaza Hotel v. HERE Loc. 483,*
    69 Cal. App. 4th 1057 (1999) ................................................................................ 12

*N.Y. Times Co. v. Sullivan,*
    376 U.S. 254 (1964) ............................................................................................... 19

*Nicosia v. De Rooy,*
    72 F. Supp. 2d 1093 (N.D. Cal. 1999) ................................................................... 21

*Nunes v. WP Co.,*
    513 F. Supp. 3d 1 (D.D.C. 2020) ........................................................................... 21

*Okun v. Super. Ct.,*
    29 Cal. 3d 442 (1981) ............................................................................................ 19

*Parrino v. FHP, Inc.,*
    146 F.3d 699 (9th Cir. 1998) ................................................................................... 5

*Paterno v. Super. Ct.,*
    163 Cal. App. 4th 1342 (2008) ............................................................................. 23

*Phila. Newspapers, Inc. v. Hepps,*
    475 U.S. 767 (1986) ............................................................................................... 17

*Pippen v. NBC Universal Media, Inc.,*
    734 F.3d 610 (7th Cir. 2013) ................................................................................. 21

*Planet Aid, Inc. v. Reveal,*
    44 F.4th 918 (9th Cir. 2022) .................................................................................. 19

iv

DAVIS WRIGHT TREMAINE LLP
350 S. GRAND AVE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90017-3847
(213) 633-6800
Fax: (213) 633-6899

*Reader's Dig. Ass'n v. Super. Ct.*,
    37 Cal. 3d 244 (1984) ......................................................................... 23

*Resolute Forest Prods. v. Greenpeace Int'l*,
    302 F. Supp. 3d 1005 (N.D. Cal. 2017) ......................................... 20, 21

*Schatz v. Republican Leader State Leadership Comm.*,
    669 F.3d 50 (1st Cir. 2012) ................................................................. 21

*Seelig v. Infinity Broad. Corp.*,
    97 Cal. App. 4th 798 (2002) ............................................................... 18

*Shahid Buttar for Cong. Comm. v. Hearst Commc'ns*,
    2022 WL 1215307 (N.D. Cal. Apr. 25, 2022) ................................... 23

*Sprewell v. Golden State Warriors*,
    266 F.3d 979 (9th Cir. 2001) ................................................................ 8

*Summit Bank v. Rogers*,
    206 Cal. App. 4th 669 (2012) ............................................................. 10

*Thomas v. L.A. Times Commc'ns LLC*,
    189 F. Supp. 2d 1005 (C.D. Cal. 2002) .............................................. 17

*Time, Inc. v. Johnston*,
    448 F.2d 378 (4th Cir. 1971) .............................................................. 20

*Tull v. Higgins*,
    2021 WL 6116971 (N.D. Cal. Dec. 27, 2021) .............................. 21, 22

*United States v. Ritchie*,
    342 F.3d 903 (9th Cir. 2003) ......................................................... 3, 4, 5

*Vogel v. Felice*,
    127 Cal. App. 4th 1006 (2005) ........................................................... 10

*Warren v. Fox Fam. Worldwide, Inc.*,
    328 F.3d 1136 (9th Cir. 2003) .............................................................. 9

*Winter v. DC Comics*,
    30 Cal. 4th 881 (2003) ......................................................................... 9

*Wynn v. Chanos*,
    75 F. Supp. 3d 1228 (2014) ................................................................ 21

**Statutes**

Cal. Civ. Code § 45 ................................................................................. 9

Cal. Civ. Proc. Code. § 425.16 ................................................................ 1

v

**DAVIS WRIGHT TREMAINE** LLP
350 S. GRAND AVE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90017-3847
(213) 633-6800
Fax: (213) 633-6899

**Rules**

Feds. R. Civ. P. § 12(b)(6) ...................................................................... 1, 5, 19

**Constitutional Provisions**

U.S. Const. amend. I ...................................................................... 1, 2, 10, 19

**Other Authorities**

Restatement (Second) of Torts § 614(1) (Am. Law Inst. 1965) .................................................... 12

MOTION TO DISMISS
Case No. 5:25-cv-06384-VKD

**DAVIS WRIGHT TREMAINE** LLP
350 S. GRAND AVE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90017-3847
(213) 633-6800
Fax: (213) 633-6899

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

This lawsuit arises from three news reports and an opinion column about the results of two independent investigations into Plaintiff's conduct while he was the head football coach at Stanford University.  Compl., Exs. A, E-G (collectively, "Articles").  After Defendants reported on those investigations, which had not previously been made public, Stanford terminated Plaintiff from his position.  In response, Plaintiff has sued ESPN and its reporter, claiming that several statements in the Articles were defamatory.

The results of Stanford's investigations into Plaintiff were serious.  For example, investigators found Plaintiff tried to remove a female employee from her job because of her sex; made inappropriate comments about another female employee's appearance and smell; made belittling comments toward at least five employees, four of whom were women; that the culture of the Stanford football program under Plaintiff's watch was unfriendly to women; and that Plaintiff showed indifference to NCAA rules.  The two investigative reports were often harshly critical of Plaintiff.  For example, one concluded his "treatment of a female employee … was inappropriate, discriminatory on the basis of her sex, and has had a significant negative impact on her," and that "[m]ore broadly, [Plaintiff's] ongoing behavior towards female (athletics) staff members interferes with their ability to avail themselves of equal employment opportunities."

Although Plaintiff acknowledges that he has not seen the two investigative reports prior to filing this suit, the gravamen of his claims are that ESPN allegedly mischaracterized both reports.  However, the two reports are submitted with this Motion, and they make clear that ESPN accurately reported on their contents.  Indeed, the Complaint is premised on little more than hyper-technical, inconsequential quibbling about how to precisely describe the highly unflattering investigative findings.  For example, the Complaint alleges it was false to report that Stanford found Plaintiff had "bullied" and "belittled" female staffers when only one of the investigative reports explicitly used both of those words.  Compl. ¶ 33.  Plaintiff also alleges that even though the two investigations were indisputably spurred by different complaints, it was false to summarize them by reporting that "multiple employees filed complaints against Taylor".

MOTION TO DISMISS
Case No. 5:25-cv-06384-VKD

Davis Wright Tremaine LLP
350 S. GRAND AVE, 27TH  FLOOR
LOS ANGELES, CALIFORNIA 90017-3847
(213) 633-6800
Fax: (213) 633-6899

*Id.* ¶ 35.  The Complaint also invents from whole cloth purportedly defamatory implications the Articles do not convey.  Finally, Plaintiff is a public figure, and his quibbling with ESPN's choice of words does not plausibly plead that Defendants published the Articles with actual malice, as the First Amendment requires.

The Complaint should be dismissed because:

*First*, almost all the statements Plaintiff identifies are protected by the First Amendment and California law because they are not materially false statements of fact.  Section IV.A.

*Second*, any remaining statements identified in the Complaint are protected because they convey a sports columnist's protected opinions.  *Id.*

*Third*, Plaintiff's attempt to posit implications the Articles do not reasonably convey is plainly prohibited by well-established law.  Section IV.B.

*Finally*, as a limited-purpose public figure, Plaintiff must plead facts that could plausibly show that each defendant published the Articles with constitutional actual malice, i.e., that they had serious, subjective doubts about their accuracy.  The Complaint pleads no such facts, nor could it.  Plaintiff merely reiterates his (erroneous) claim that the Articles are false and otherwise pleads facts that, if anything, show the *absence* of actual malice.  *See* Section IV.C.  For these reasons, the Motion should be granted and Plaintiff's Complaint dismissed with prejudice.

## II.    STATEMENT OF FACTS

Plaintiff is the former head football coach at Stanford University.  Compl. ¶¶ 1, 12.  He was hired by Stanford in 2022 and terminated in March 2025.  *Id.* ¶ 12.

In 2023, and then again in 2024, Stanford hired two different outside counsel to investigate complaints of workplace misconduct by Plaintiff.  While the two investigations were conducted independently, they were not unrelated.  They were initiated after similar complaints and the second, 2024 investigative report, states that its analysis and conclusions took into account the written report from the 2023 investigation.

### A.    The Stanford Investigations

#### 1.    The 2023 Investigation

The Complaint alleges that the first investigation began in or around May 2023 and was

**DAVIS WRIGHT TREMAINE** LLP
350 S. GRAND AVE, 27TH  FLOOR
(213) 633-6800
LOS ANGELES, CALIFORNIA 90017-3847
Fax: (213) 633-6899

conducted by an external reviewer, Kate Weaver Patterson ("KWP").  Compl. ¶ 28.  The full

KWP report ("2023 Report") states that it was based on 30 interviews and a review of multiple

documents, following several reports by female staffers of alleged misconduct by Plaintiff.

Freeman Decl., Ex. 2 at 1 n.2.[2]  It states that initially ████████████████████████

complained to the Athletic Director and ██████████████ that Plaintiff planned to fire

her based on her gender.  █████████████ in turn reported the concerns to ████████,

████████████████████████, who "intimated that the culture and morale in the

football office was deteriorating."  *Id.* at 1.  As a result, the Athletic Director hired KWP with a

broad mandate:  to "review the allegations and assess the culture of the football program."  *Id.*

The resulting 2023 Report included four findings.  It found that Plaintiff made repeated,

inappropriate comments about ██████████ appearance and smell.  Not only did Plaintiff make

such comments directly to ████████, he made similar comments about her to a *student-athlete*

(e.g., "doesn't █████ hair look really cute?" and "[██████████] always smells nice.").  *Id.* at 5.

Plaintiff also expressed incredulity to ██████████ that she enjoys football.  *Id.* at 4.  ████

████████████, and told KWP that Plaintiff's conduct towards her ████████████.

*Id.* at 5.

The 2023 Report also found that "[t]he football culture is not welcoming to women"

under Plaintiff's leadership.  *Id.*  Multiple staffers reported a negative "culture shift for women"

from their experiences under the previous head coach.  *Id.* at 6-8.  The 2023 Report further found

that "Coach Taylor has made belittling comments and has expressed inappropriate anger and

frustration in interactions with staff."  *Id.* at 8.  Staffers characterized Plaintiff's behavior as

"super aggressive" and "shut[ting] her down and dismiss[ing] her."  *Id.* at 9, 10.  As the 2024

Report would later emphasize, three of the four interactions where Plaintiff was found to have

made belittling comments in 2023 were directed at women, including █████████████████

██████████████  ███████████████████████████.  *Id.* at 9.

The only allegation the 2023 Report stated "there is not sufficient evidence to find" was

_____

[2] The 2023 Report is attached to the Freeman Declaration as Exhibit 2, and is
incorporated by reference because Plaintiff "refers extensively to the document," which "forms
the basis of the plaintiff's claim."  *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

MOTION TO DISMISS
Case No. 5:25-cv-06384-VKD
3
DAVIS WRIGHT TREMAINE LLP
350 S. GRAND AVE, 27TH  FLOOR
LOS ANGELES, CALIFORNIA 90017-3847
(213) 633-6800
Fax: (213) 633-6899

█████████ allegation that Plaintiff sought to terminate her on the basis of her gender.  *Id.* at 2-4.  Even so, because "people in the football program perceive a shift under Taylor of women being less respectfully treated," the Report noted that "th[e] perception remains among staff" that █████████ treatment was gender-based.  *Id.*

The Complaint alleges that Plaintiff was provided with "a summary of the findings" in 2023.  Compl. ¶ 28.  Plaintiff's signature appears on a letter addressed to him with the subject line "Outcome Letter and Written Warning"[3] summarizing the investigation's findings, which included:

- There was "insufficient evidence to find that gender was the reason for [Plaintiff's] request to █████████."  Freeman Decl. Ex. 1 at 2.
- Plaintiff "made inappropriate comments to a female [athletics department] staff member about her appearance, smell, and interest in football."  *Id.*
- "[T]he current culture of football, perpetuated by football leadership, is not welcoming to women."  *Id.*
- Plaintiff "in several interactions with staff" made "belittling comments and expressed inappropriate anger and frustration (i.e. yelling and outsized reactions)" on "at least four separate occasions[,]" including "[d]uring █████████ █████████" and "[d]uring █████████" among others.  *Id.*

Based on those conclusions, Plaintiff was issued a written warning that "[a]dditional behaviors similar to those discussed herein may result in additional corrective action up to and including the termination of your employment."  *Id.*

### 2.  The 2024 Investigation

The Complaint alleges that the 2024 Investigation was conducted by a separate outside counsel, Timothy O'Brien.  Compl. ¶¶ 30-32.  Plaintiff implicitly acknowledges that he was also

---

[3]  Defendants attach the letter to the Freeman Declaration as Exhibit 1, which is the "summary of the findings" Plaintiff references in the Complaint and accordingly is incorporated by reference.  *See* Compl. ¶ 28; *Ritchie*, 342 F.3d at 908.

MOTION TO DISMISS
Case No. 5:25-cv-06384-VKD

DAVIS WRIGHT TREMAINE LLP
350 S. GRAND AVE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90017-3847
(213) 633-6800
Fax: (213) 633-6899

provided with a summary of the results of the 2024 Investigation, and alleges the 2024 Investigation "made findings against [Plaintiff]" which Plaintiff "contested." *Id.* ¶¶ 31-32. Nonetheless, he also alleges that "both Stanford and Taylor had acknowledged the results of the [two] investigations and moved on." *Id.* ¶ 26.

As with the prior year's investigation, the second also resulted in an extensive written report ("2024 Report"). Freeman Decl., Ex. 3.[4]  The 2024 Report states that the decision to launch a second investigation "followed new verbal and written complaints" made by ██████ ████████████████████████. *Id.* at 1.  The 2024 Report explained that Mr. O'Brien also had full access to the 2023 investigation, and that it "also considered whether Coach Taylor's behaviors were a continuation of the conduct that resulted in his previous written warning" in 2023. *Id.* at 1 n.1.

The 2024 Investigation made four findings of fact. *First*, it determined that:

> Coach Taylor's treatment of ████████████████ was inappropriate, discriminatory on the basis of her sex, and has had a significant negative impact on her.  More broadly, Coach Taylor's ongoing behavior towards female ████████████████████████ staff members interferes with their ability to avail themselves of equal employment opportunities in their working conditions.  Furthermore, Coach Taylor's behavior is inconsistent with the high ethical and professional standards upheld by the University.

*Id.* at 3.

The Summary of Findings explains that this relates especially to ████████.  Freeman Decl., Ex. 3 at 3.  During a meeting about "████████████████████████," Plaintiff "engaged in a strong and broad-reaching personal attack" on ████████████████████████."  *Id.*

---

[4] Because the 2024 Investigation also is repeatedly referenced and relied on by the Complaint, it also is incorporated by reference and properly considered on this Motion.  *See Ritchie*, 342 F.3d at 908.  Indeed, the doctrine is particularly applicable here, to prevent Plaintiff from misrepresenting the document.  *See Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018) (incorporation by reference doctrine "prevents plaintiffs from selecting only portions of documents that support their claims, while omitting portions of those very documents that weaken—or doom—their claims").  *See also Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998), *superseded by statute on other grounds as recognized in Abrego v. Dow Chem. Co.*, 443 F.3d 676, 681-82 (9th Cir. 2006) (observing "the policy concern underlying the rule: Preventing plaintiffs from surviving a Rule 12(b)(6) motion by deliberately omitting references to documents upon which their claims are based").

MOTION TO DISMISS
Case No. 5:25-cv-06384-VKD

5

DAVIS WRIGHT TREMAINE LLP
350 S. GRAND AVE, 27TH  FLOOR
LOS ANGELES, CALIFORNIA 90017-3847
(213) 633-6800
Fax: (213) 633-6899

The 2024 Report states that Plaintiff told the investigator he was simply being "honest, fair, direct, and straightforward" with ███████, but the investigator concluded that explanation was "pretext for [Plaintiff's] real motivation" and that "both male and female witnesses consistently report that such behavior by Coach Taylor is more targeted at (and impactful to) female staff." *Id.* Based on "several … witness interviews," the investigator further concluded that Plaintiff "attempted to bully ███████ because she is a woman and so that she would relent and agree with his ███████████████████." *Id.*; *see also id.* at 19. Plaintiff then "sought to have ███████ removed from working with" the Stanford football program despite that ███████ "actions were by all accounts, fair and quite generous to the football program and ███████ ███████████████████." *Id.* at 4.

*Second*, the investigator concluded that "Coach Taylor's conduct demonstrates a lack of respect and integrity for ███████ and is a continuation of the type of conduct that resulted in the Written Warning issued to him on December 18, 2023." Freeman Decl., Ex. 3 at 4. The investigator also concluded that Plaintiff "continues to express anger and aggression which he takes out on ███████████" and that his behavior toward ███████ "is a similar approach … to previous meetings with ███████████████ on gender equity requirements." *Id.* at 5.

*Third*, the 2024 Report concluded that "[u]nder Coach Taylor's leadership, the football program has disregarded or simply not followed NCAA rules that they have been repeatedly and consistently educated on by the Compliance Office, and as a result, he is not sufficiently promoting an atmosphere of compliance or effectively monitoring his staff." *Id.* at 5.

*Fourth*, the investigator concluded that Plaintiff "retaliated against ███████ by seeking her removal from her assigned duties as ███████████████████ ████████████████████████ after she raised concerns about the team's ongoing ██████████████████." *Id.*.

The 2024 Report repeatedly referenced the findings of the 2023 Investigation, and found that "the unwarranted treatment of women is a continuation of the types of actions that are not welcoming to women and that Coach Taylor was warned about following the previous

MOTION TO DISMISS
Case No. 5:25-cv-06384-VKD

DAVIS WRIGHT TREMAINE LLP
350 S. GRAND AVE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90017-3847
(213) 633-6800
Fax: (213) 633-6899

investigation." *Id.* at 4.  For example, the 2024 Report noted that the 2023 investigation had found that "Coach Taylor made belittling comments," and in three of four of those situations "the comments were addressed to women."  *Id.*  The 2024 Report also found that Plaintiff had continued that conduct by making additional "belittling" comments to ████████.  *Id.* at 4-5.

**B.      The ESPN Articles and Column**

On March 19, 2025, ESPN published the first article at issue on its website.  Compl., Ex. A.  That article explained that ESPN had obtained the results of a pair of Stanford investigations into allegations that Plaintiff had engaged in workplace misconduct.  Before providing more details of the investigations, the article prominently published responses from the key persons involved (taking up eight of the first ten paragraphs), including Plaintiff (in a statement released by Stanford), Stanford itself, and another athletic department administrator who had been cited for inappropriate conduct in the first investigation.

The March 19 article then provided more details about the investigations, quoting from the two reports.  The article accurately reported that the investigations determined, among other things, that Plaintiff made inappropriate comments to a female athletic department staffer about her appearance, smell, and interest in football; that he discriminated and retaliated against a compliance officer; and that he engaged in belittling and bullying behavior toward multiple female staff members.  *Id.*  The article also reported that an allegation of gender bias by one of the complainants (████████) was not substantiated.  *Id.* ("[o]ne of the complainants alleged that Taylor tried to have her removed from her job because of a gender bias.  Patterson determined Taylor's actions in that case were not motivated by gender bias").

The March 19 article explained that because many of the people named in the investigations expressed fear of retaliation, ESPN chose not to publish the reports themselves and did not name the employees who reported the alleged misconduct.  *Id.*  The article also quoted two confidential sources who echoed the conclusions reached by the investigators.  *Id.*

On March 22, 2025, ESPN published a column by football reporter and analyst Dan Wetzel.  The column began by linking to the March 19 article and summarizing its report of the two investigations, as well as Taylor's response.  Wetzel then offered some of his views on the

DAVIS WRIGHT TREMAINE LLP
350 S. GRAND AVE, 27TH  FLOOR
LOS ANGELES, CALIFORNIA 90017-3847
(213) 633-6800
Fax: (213) 633-6899

import of the reports, including that "it's somewhat of a mystery exactly why he remained on the job"; that "the attitude displayed to compliance is a red flag of its own"; and that many questions remain about the direction in which former quarterback Andrew Luck, who had assumed the new position of general manager in November 2024, wanted to take the football program.

On March 25, 2025, ESPN published another article reporting that Stanford had fired Plaintiff, as explained in a statement by Luck that the article published in full. Otherwise, the March 25 article largely repeated information from the March 19 one. Compl., Ex. E. Finally, on April 16, 2025, ESPN reported on Plaintiff's response to his firing, including by linking to a public statement he issued. *Id.*, Exs. F-G. Plaintiff filed this lawsuit on July 30, 2025.

### III.    LEGAL STANDARD

On a motion to dismiss for failure to state a claim, "[d]ismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). A court should grant a motion to dismiss if a plaintiff fails to plead enough "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). A plaintiff who pleads only conclusory assertions of the elements of the cause of action does not meet this standard. *Id.*

In evaluating a motion to dismiss, the Court need not accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). A plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" *Twombly*, 550 U.S. at 555 (citation omitted). And while, when deciding whether to grant a motion to dismiss, the Court generally "may not consider any material beyond the pleadings," *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1989), the Court may consider material submitted as part of the complaint or relied upon in the complaint and may also consider material subject to judicial notice. *See Lee v. City of Los Angeles*, 250 F.3d 668, 688-89 (9th Cir. 2001), *abrogated on other grounds by Galbraith v. Cnty. of Santa*

DAVIS WRIGHT TREMAINE LLP
350 S. GRAND AVE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90017-3847
(213) 633-6800
Fax: (213) 633-6899

1  *Clara*, 307 F.3d 1119, 1125 (9th Cir. 2002); *Warren v. Fox Fam. Worldwide, Inc.*, 328 F.3d

2  1136, 1139 (9th Cir. 2003) (holding the court is "not required to accept as true conclusory

3  allegations which are contradicted by documents referred to in the complaint") (citation omitted).

4        A court should dismiss a complaint without leave to amend if the defects cannot be cured

5  by amendment. *See Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051-52 (9th Cir.

6  2003). Courts have made clear that early dismissal at the pleading stage is especially appropriate

7  in cases such as this one that target constitutionally protected speech. In *Winter v. DC Comics*,

8  the California Supreme Court emphasized that "because unnecessarily protracted litigation

9  would have a chilling effect upon the exercise of First Amendment rights, speedy resolution of

10  cases involving free speech is desirable." 30 Cal. 4th 881, 891 (2003). As explained below,

11  Plaintiff's claims rooted in Defendants' constitutionally protected reporting fail on their faces

12  and should be dismissed.

13              **IV.    PLAINTIFF'S CLAIMS FAIL AS A MATTER OF LAW**

14        Under California law, defamation is a (1) false and (2) unprivileged publication (3)

15  exposing a person to "hatred, contempt, ridicule, or obloquy, or which causes him to be shunned

16  or avoided, or which has a tendency to injure him in his occupation." Cal. Civ. Code § 45 (libel).

17  The Complaint targets three news articles, one column, and an Instagram post linking to the

18  March 19 Article. Compl., Exs. A-B, E-G. Though Plaintiff's recitation of the allegedly

19  defamatory statements spans nearly 20 paragraphs, *id.* ¶¶ 50-69, his allegations boil down to

20  disputing four categories of statements he claims appear multiple times throughout the Articles:

21  **(1)** variations of the headline and statements that the investigations concluded that Plaintiff

22  "bullied and belittled female athletic staffers, sought to have an NCAA compliance officer

23  removed after she warned him of rules violations and repeatedly made 'inappropriate' comments

24  to another woman about her appearance, according to documents from a pair of investigations

25  obtained by ESPN" (Compl. ¶¶ 52, 52(a), 53, 55(a)) ("Statement 1"); **(2)** the statement in the

26  April 16, 2025 Article that "[t]hree of the allegations regarding belittling and inappropriate

27  behavior toward multiple women were deemed to have merit" (*id.* ¶ 56) ("Statement 2"); **(3)**

28  variations of the statement that "[b]oth investigations determined that Taylor's treatment of

DAVIS WRIGHT TREMAINE LLP
350 S. GRAND AVE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90017-3847
(213) 633-6800
Fax: (213) 633-6899

1    employees, particularly of women, was inconsistent with Stanford's standards" (*id.* ¶ 52(c))

2    ("Statement 3"); and **(4)** the statement that "[t]he investigations began after multiple employees

3    filed complaints against Taylor for what they called hostile and aggressive behavior, as well as

4    personal attacks, the reports said" (*id.* ¶¶ 52(b), 55(b), 56) ("Statement 4").

5            As the above summary of the statements makes clear, the Complaint's theory of falsity is

6    that ESPN misreported the contents of the investigative reports. *See, e.g., id.* ¶ 26 ("Defendants

7    not only reported the allegations against Taylor contained in the leaked documents in a

8    misleading and sensationalized manner but also falsely reported the investigatory findings

9    themselves … "); ¶ 57 ("The statements made by Defendants about Taylor … were false

10   because, among other things, the First Investigation did not determine that Taylor engaged in

11   gender-based bullying or belittling …"). Those reports are now properly before the Court, and

12   they speak for themselves and make clear why the Complaint merits dismissal on its face. *See*

13   *Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008) (Courts "need not accept as true

14   allegations contradicting documents that are referenced in the complaint.").

15           **A.      The Allegedly Libelous Statements Are Substantially True.**

16           Under the First Amendment, the burden is on the plaintiff to establish that allegedly

17   defamatory statements are materially false. *Gilbert v. Sykes*, 147 Cal. App. 4th 13, 26-27 (2007).

18   Importantly, "truth" in the context of defamation law does not mean literal truth. A defendant

19   need not "justify the literal truth of every word of the allegedly defamatory content," nor must

20   the court "parse each word written by [defendant] to determine its truthfulness." *Summit Bank v.*

21   *Rogers*, 206 Cal. App. 4th 669, 697 (2012). Rather, any "[m]inor inaccuracies do not amount to

22   falsity so long as 'the substance, the gist, the sting, of the libelous charge be justified.'" *Vogel v.*

23   *Felice*, 127 Cal. App. 4th 1006, 1021 (2005) (citation omitted). If the gist of a statement is

24   accurate, it is "*substantially* true" for purposes of a defamation claim. *Id. See also Jackson v.*

25   *Mayweather*, 10 Cal. App. 5th 1240, 1262 (2017), *as modified* (Apr. 19, 2017) (statement that

26   model plaintiff's entire appearance was result of cosmetic surgery was not sufficiently false

27   under substantial truth doctrine where plaintiff tacitly conceded she had had some plastic

28   surgery); *Carver v. Bonds*, 135 Cal. App. 4th 328, 347 (2005) (statement that plaintiff was a

10

**DAVIS WRIGHT TREMAINE** LLP
350 S. GRAND AVE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90017-3847
(213) 633-6800
Fax: (213) 633-6899

1   "liar" substantially true where plaintiff "threatened to lie" about defendant and reneged on an

2   offer to supply him with free orthotics); *Campanelli v. Regents of Univ. of Cal.*, 44 Cal. App. 4th

3   572, 582 (1996) (statement that players were "in trouble psychologically" was substantially true

4   where coach made verbally abusive remarks toward them such that some wanted to transfer).

5       Here, the two investigative reports demonstrate that ESPN's articles were a substantially

6   accurate summary of their contents.  Taken together, the gist of the reports was that on multiple

7   occasions Plaintiff engaged in demeaning, bullying, and discriminatory conduct, primarily

8   directed at female employees in the athletic department.  That conduct fostered a culture that was

9   "unwelcoming to women."  And the 2024 Report found that rather than absorbing any lessons

10  from the 2023 investigation, Plaintiff engaged in further discriminatory conduct.

11                **1.      The First Challenged Statement Is Substantially True**

12      The first statement Plaintiff alleges is defamatory is that "Stanford head football coach

13  Troy Taylor bullied and belittled female athletic staffers, sought to have an NCAA compliance

14  officer removed after she warned him of rules violations and repeatedly made 'inappropriate'

15  comments to another woman about her appearance, according to documents from a pair of

16  investigations obtained by ESPN."  Compl. ¶ 52(a).  *See also id.* ¶¶ 52, 53, 55(a) (similar).

17      Plaintiff claims this statement is false primarily because, he alleges, only the 2024

18  Investigation found he had engaged in bullying and belittling of women.  *See e.g.*, Compl. ¶ 57

19  (alleging that "the [f]irst [i]nvestigation did not determine that Taylor engaged in gender-based

20  bullying or belittling" and "there were not 'two investigations' that found that Taylor 'had

21  bullied and belittled athletics staffers, especially women").  Put another way, Plaintiff implicitly

22  acknowledges that (1) the 2024 Report explicitly concluded that he had both "bullied" and

23  "belittled" women; (2) the 2023 Report also found that he had "belittled" four staffers; and (3)

24  the 2024 Report emphasized that three of those four staffers in the 2023 Report were women.

25  Nonetheless, Plaintiff alleges he was defamed because the 2023 Report did not actually use the

26  word "bully," and it did not explicitly point out that three of the four staffers he belittled were

27  women.  This is exactly the type of word parsing the substantial truth doctrine flatly rejects.

28

MOTION TO DISMISS
Case No. 5:25-cv-06384-VKD

DAVIS WRIGHT TREMAINE LLP
350 S. GRAND AVE, 27TH  FLOOR
LOS ANGELES, CALIFORNIA 90017-3847
(213) 633-6800
Fax: (213) 633-6899

As a threshold matter, the Articles did not report that ***both*** investigative reports explicitly came to identical conclusions using identical words.[5] But even if the Articles had said that, it would make no difference. In substance both investigations ***did*** conclude that Plaintiff bullied and belittled female athletic staffers. The 2023 Report determined that Plaintiff "made inappropriate comments to ███████████████ about her appearance" and that he "made belittling comments" on four other occasions. Freeman Decl., Ex. 1 at 2. It also found merit in descriptions of Taylor's behavior such as being "super aggressive" and "shut[ting] her down and dismiss[ing]" a female employee—all synonymous with "bullying." Ex. 2 at 5, 20. It concluded Plaintiff fostered a culture that was "not welcoming to women." *Id.*, Ex. 2 at 9-10. And the 2024 Report specifically pointed to the 2023 findings in support of its conclusions that Plaintiff "attempted to bully ███████," and that taken together the investigations found that Plaintiff "made belittling comments" targeting primarily women. *Id.*, Ex. 3 at 3-4.

Finally, it would make no difference to the merits of this Motion whether Plaintiff was found to have "bullied" women once or twice, or whether the staffers he "belittled" were mostly or only women. Taken together, the gist of the two investigative reports' findings was that

---

[5] The alleged meaning of any publication is a question of law for the Court. *E.g., Barker v. Fox & Assocs.*, 240 Cal. App. 4th 333, 343 n.3 (2015) ("the court must determine, as a question of law, whether the defamatory matter is on its face or capable of the defamatory meaning attributed to it"). *See also* Restatement (Second) of Torts § 614(1) (2024 Update) (the "court determines (a) whether a communication is capable of bearing a particular meaning, and (b) whether that meaning is defamatory"). Courts "apply a totality of the circumstances test to review the meaning of the language in context and whether it is susceptible to a meaning alleged by the plaintiff." *Balzaga v. Fox News Network, LLC*, 173 Cal. App. 4th 1325, 1337 (2009). *See also Monterey Plaza Hotel v. HERE Loc. 483*, 69 Cal. App. 4th 1057, 1064 (1999) ("[t]he publication in question must be considered in its entirety; it may not be divided into segments and each portion treated as a separate unit") (internal quotation marks and alterations omitted). Plaintiff invents this alleged meaning by citing the headline and photo caption of the March 19, 2025 Article, which was reproduced in Thai's Instagram post, as well as the first two sentences of the March 25, 2025 article, each in isolation. Compl. ¶¶ 52(a), 52, 53, 55(a). Read in context, it is clear that these statements, which appear near the top of each story and are offered as summaries of what is to come in the Articles, are summarizing the findings of ***both*** investigations ***together***, not purporting to literally state that ***each*** of the Investigations used the same identical words. Exs. A, F-G. *See, e.g., Balzaga*, 173 Cal. App. 4th at 1341 (a "caption cannot be reasonably viewed apart from the rest of the story"); *J-M Mfg. Co. v. Phillips & Cohen LLP*, 247 Cal. App. 4th 87, 102 (2016) (the alleged "inference is not reasonably supportable when the headline is read and considered with the press release as a whole").

---

MOTION TO DISMISS
Case No. 5:25-cv-06384-VKD

DAVIS WRIGHT TREMAINE LLP
350 S. GRAND AVE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90017-3847
(213) 633-6800
Fax: (213) 633-6899

Plaintiff seriously mistreated female employees because of their gender.  That gist is what ESPN accurately reported.  *See, e.g., Colt v. Freedom Commc'ns, Inc.*, 109 Cal. App. 4th 1551, 1560 (2003) (striking defamation claim where articles "fairly describe the gist of plaintiffs' misconduct" and rejecting the complaint's "quarrel[ing] with the language of the [A]rticles" at "a level of exegesis beyond the ken of the average reader of newspaper articles").

## 2.    The Second Challenged Statement Is Substantially True.

Plaintiff alleges that Statement 2 is false because "there was no finding after the [2023] Investigation that 'allegations regarding belittling … behavior toward … women were deemed to have merit.'"  Compl. ¶ 57 (alteration original).  This claim goes beyond parsing words; it actually lifts one sentence from an article divorced from its context, and then splices-and-dices it with ellipses in an effort to change its meaning.  In any event, the words Plaintiff references are substantially true, regardless of how the Article is quoted.

The actual statement at issue is found in this paragraph from the April 16 article:

> While the investigation was initially launched in response to a single complainant who alleged gender bias and "a culture problem in football," the investigation ultimately included interviews with at least 20 Stanford athletic department staffers regarding four allegations against Taylor. *Three of the allegations regarding belittling and inappropriate behavior toward multiple women were deemed to have merit.* The investigator did find "insufficient evidence" regarding the original complaint.

Compl., Ex. G (emphasis added).  In context, the point of this paragraph is to briefly summarize the four findings of the 2023 Investigation.  One finding was there was "insufficient evidence" to substantiate ███████ allegation of gender discrimination.  The other three were that Plaintiff had made "inappropriate comments" to a female staffer, fostered a football "culture" that "is not welcoming to women," and made "belittling comments" to four other employees, three of whom were women.  The April 16 article is a substantially true summary of those findings.

The Complaint takes a single line from that paragraph, and then further slices it to make it appear that ESPN reported that *all* allegations at issue in the 2023 Investigation were deemed to have merit.  The actual article plainly does not say that—it reports the opposite.  *Cf. Balzaga*, 173 Cal. App. 4th at 1338 ("[d]efamation actions cannot be based on snippets taken out of

13

DAVIS WRIGHT TREMAINE LLP
350 S. GRAND AVE, 27TH  FLOOR
LOS ANGELES, CALIFORNIA 90017-3847
(213) 633-6800
Fax: (213) 633-6899

1    context"). Moreover, even if ESPN had reported the facts exactly as the Complaint alleges, that

2    would still have been substantially true.

3    Once again, the gist of the 2023 Report was that Plaintiff mistreated female employees.

4    Whether that occurred in three out of four, or all four alleged occasions would not materially

5    alter that gist. Numerous cases hold that where some type of misconduct was found to have

6    occurred, or even alleged, misstating the precise number of times it happened does not affect a

7    statement's substantial truth. *E.g., Carver*, 135 Cal. App. 4th at 352 (2005) (news article

8    reporting the number of medical board complaints against a doctor was substantially true where

9    the article reported 22 complaints and the doctor claimed it was only six); *Gallagher v. Philipps*,

10    563 F. Supp. 3d 1048, 1088-89 (S.D. Cal. 2021) (plaintiff's argument that defendant incorrectly

11    reported that multiple witnesses alleged plaintiff shot an unarmed child when in fact only one

12    witness so alleged "do[es] not change the gist or sting of the article").

13    **1.    The Third Challenged Statement Is Substantially True.**

14    The third statement Plaintiff challenges, from the March 19 article, is that "[b]oth

15    investigations determined that Taylor's treatment of employees, particularly of women, was

16    inconsistent with Stanford's standards." Compl. ¶ 52(c). Here too, Plaintiff's claims appear to be

17    that this statement is materially false because only the second investigation explicitly used the

18    word "standards." Freeman Decl., Ex. 3 at 4 ("Coach Taylor's behavior is inconsistent with the

19    high ethical and professional standards upheld by the University"). This further attempt to parse

20    words has no merit. Following the 2023 Report, Taylor was informed by Stanford's Athletic

21    Director: "As a result of these findings, I am giving you this written warning … Additional

22    behaviors similar to those discussed herein may result in additional corrective action up to and

23    included the termination of your employment." *Id.*, Ex. 1 at 2. In substance, that was plainly a

24    statement that Plaintiff's conduct was inconsistent with Stanford's standards.

25    Moreover, the 2024 Report made clear that Mr. O'Brien also understood the 2023 Report

26    to have found conduct inconsistent with Stanford's standards. The 2024 Report's explicit

27    statement that Plaintiff's behavior was inconsistent with professional standards was based, in

28    part, on finding that Plaintiff had engaged in "ongoing behavior" that included the problematic

14

DAVIS WRIGHT TREMAINE LLP
350 S. GRAND AVE, 27TH  FLOOR
LOS ANGELES, CALIFORNIA 90017-3847
(213) 633-6800
Fax: (213) 633-6899

conduct identified in the 2023 Report. *Id.*, Ex. 3 at 4. Indeed, the Complaint is noticeably silent as to how making inappropriate comments to and about women, fostering a culture unwelcoming to women, and belittling employees could possibly be *consistent* with Stanford's standards.

### 2. The Fourth Challenged Statement Also Is True.

The final category of statements Plaintiff challenges are statements indicating that "[t]he investigations began after multiple employees filed complaints against Taylor for what they called hostile and aggressive behavior, as well as personal attacks, the reports said." Compl. ¶¶ 4, 52(b), 55(b), 56. Once again, the alleged falsity appears to boil down to quibbling about specific numbers. Plaintiff asserts that only the second investigation was prompted by more than one complaint. *See also id.* ¶ 35 (alleging the statement is false because "[i]n reality, the first investigation began after a single complaint by a single individual that Taylor wanted to replace the football administrator because she is a woman"); *id.* ¶ 56-57, 66 (similar). This exercise in semantics is both factually incorrect and legally irrelevant.

As a threshold matter, the Complaint again mischaracterizes the Articles. In context, it is clear that each time this statement appears, it refers to the two investigations *together*, and is not purporting to itemize the number of distinct complaints separately attributable to each investigation. *E.g.*, Compl., Ex A at 3; Ex. F at 2.[6] *See also James v. San Jose Mercury News, Inc.*, 17 Cal. App. 4th 1, 17 (1993) (rejecting plaintiff's attempt to fashion defamation claim based on "semantic hypertechnicality"). And even if that were not so, these statements would still be true or substantially true. A close reading of the 2023 Report makes clear that while events may have been set in motion with an initial complaint by ██████, others (such as ██ ████) also voiced concerns before KWP was retained. As a result, its mandate went beyond considering ████ specific situation. Rather, it was to "review the allegations and assess the culture of the football program." Freeman Decl., Ex. 2 at 1. And the 2024 Investigation began after two "new verbal and written complaints" were made by two female members of the athletics staff, for hostile and aggressive behavior. *Id.*, Ex. 3 at 1.

---

[6] Furthermore, as Plaintiff acknowledges, the April 16, 2025 article explicitly states that the 2023 Investigation was "launched in response to a single complaint." Compl., Ex. G at 1. If anything, this statement is more charitable to Plaintiff than the actual facts.

MOTION TO DISMISS
Case No. 5:25-cv-06384-VKD

DAVIS WRIGHT TREMAINE LLP
350 S. GRAND AVE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90017-3847
(213) 633-6800
Fax: (213) 633-6899

1    Second, whether a total of three, four or more employees initially filed complaints, and

2    how those complaints were precisely divided between the two investigations, makes no

3    difference.  The gist of the investigative reports is that multiple employees complained about

4    Plaintiff's conduct (both before and during the investigations), and both investigations found

5    similar patterns of misconduct.  Because the alleged minor inaccuracy would not "have a

6    different effect on the mind of the reader from that which the pleaded truth would have

7    produced," it is not actionable.  *Masson v. New Yorker Mag., Inc.*, 501 U.S. 496, 517 (1991).

8          **B.**      **The Alleged Defamatory Implications Are Not Actionable.**

9    In addition to alleging specific mischaracterizations of the investigative reports, Plaintiff

10   asserts that the Articles contain defamatory implications.  First, he claims the "thrust" of the

11   Articles implies that "numerous complaints by multiple women had been made against Taylor

12   and that many of these purported complaints had been determined by two different investigators

13   in two separate investigations to have merit."  Compl. ¶ 58.  But whether implied or not, that

14   "thrust" (or "gist") is a substantially true summary of the 2023 and 2024 Reports.

15   Otherwise, the Complaint pleads a hodgepodge of alleged implications.  It alleges in

16   conclusory fashion that "Defendants' misleading statements and insinuations included: (1)

17   statements that falsely insinuated that Taylor had 'targeted' potentially dozens of women with

18   aggressive, bullying, belittling, and discriminatory behavior, (2) statements that falsely suggested

19   or implied that Taylor admitted to having engaged in gender-based 'bullying' and 'belittling' and

20   other discriminatory conduct; and (3) statements that falsely suggested that, prior to March 25,

21   2025, Stanford had not expressed support for Taylor (when in fact it had done so repeatedly) and

22   that Stanford had no explanation for having kept Taylor on the job after the Second

23   Investigation."  *Id.*  None of the alleged implications are actionable.

24   Whether any statement is susceptible to the meaning alleged by the plaintiff is a threshold

25   question of law for the Court.  *See* n. 5, *supra*.  That is especially so for defamation-by-

26   implication claims.  Such claims face strict obstacles, especially in cases where a public figure

27   seeks to hold journalists liable for reporting true facts about matters of public concern.  Courts

28   have observed that "the Constitution requires us to tip [the scales] in favor of protecting true

16

DAVIS WRIGHT TREMAINE LLP
350 S. GRAND AVE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90017-3847
(213) 633-6800
Fax: (213) 633-6899

speech," therefore "claims of defamation by implication, which by nature present ambiguous evidence with respect to falsity, face a severe constitutional hurdle." *Locricchio v. Evening News Ass'n*, 476 N.W.2d 112, 129 (Mich. 1991) (quoting *Phila. Newspapers, Inc. v. Hepps*, 475 U.S. 767, 776 (1986)). *Accord Chapin v. Knight-Ridder*, 993 F.2d 1087, 1092-93 (4th Cir. 1993) ("because the constitution provides a sanctuary for truth, a libel-by-implication plaintiff must make an especially rigorous showing where the expressed facts are literally true"); *Thomas v. L.A. Times Commc'ns LLC*, 189 F. Supp. 2d 1005, 1012 (C.D. Cal. 2002) ("the Court is mindful of the 'leeway for criticism' of public figures, including for 'implications deprecatory to plaintiff'"). Courts consistently reject attempts to hold defendants liable for things they did not actually say. As the California Supreme Court has explained, "[i]n determining the defamatory nature of written material, the fact that some person might, with extra sensitive perception, understand such a meaning cannot compel this court to establish liability at so low a threshold." *Forsher v. Bugliosi*, 26 Cal. 3d 792, 805-06 (1980). "Rather, the test … is whether by reasonable implication a defamatory meaning may be found in the communication." *Id.* at 806.

None of Plaintiff's attenuated "implication" claims meet these strict requirements. ***First***, the Articles do not imply that Plaintiff "'targeted' potentially dozens of women with aggressive, bullying, belittling, and discriminatory behavior." Compl. ¶ 58. Other than Plaintiff's own complaint that he felt "targeted" by the Compliance Office, *id.*, Ex. A, the only other mention of "targeting" appears in the March 19 article, which quotes a source stating that Plaintiff "is an "equal opportunity a--hole," though "his behavior more often targeted women." *Id.* That Plaintiff's behavior "more often" targeted women is exactly what the 2023 and 2024 Investigations found. *See, e.g.*, Freeman Decl., Ex. 2 at 5 ("the current culture of the Football Program, which is set by the Football Leadership, is not welcoming to women"); *Id.*, Ex. 3 at 3 ("More broadly, Coach Taylor's ongoing behavior towards female ███████████ interferes with their ability to avail themselves of equal employment opportunities in their working conditions."). Where the Articles actually mention a large group of people, it is in reference to the number of people investigators interviewed, not that Plaintiff "targeted." *E.g.*, Compl., Ex. G at 2 (2023 Investigation "ultimately included interviews with at least 20 Stanford

DAVIS WRIGHT TREMAINE LLP
350 S. GRAND AVE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90017-3847
(213) 633-6800
Fax: (213) 633-6899

athletic department staffers regarding four allegations against Taylor"); *Id*., Ex. A at 1 (similar).[7]

**Second**, the Articles do not imply that Plaintiff "admitted to having engaged in gender-based 'bullying' and 'belittling' and other discriminatory conduct." Compl. ¶ 58. At most, the March 19 article merely republished Plaintiff's *own statement* released through Stanford, explaining that he "willingly complied with the investigations, accepted the recommendations that came out of them, and used them as a learning opportunity to grow in leadership and how I interact with others." *Id*., Ex. A. The Complaint does not allege Plaintiff was misquoted. The Articles also quoted examples of Plaintiff defending his conduct. The March 19 Article quoted a statement from the 2023 Report explaining that Plaintiff "seemed surprised" that his comments to a female staffer about her appearance and smell "were inappropriate." *Id*. The April 16 article also reported Plaintiff's statement that "he was not fired for cause" and noted that Plaintiff "did not acknowledge any wrongdoing in his statement." *Id*., Ex. G. This alleged implication is also not supported by the Articles.

**Finally**, the Articles also do not "falsely suggest[] that, prior to March 25, 2025, Stanford had not expressed support for Taylor" or "that Stanford had no explanation for having kept Taylor on the job after the Second Investigation." Compl. ¶ 58. To the contrary, the March 19 article included a statement from Stanford explaining that the "University took appropriate measures" in response to the Investigations and that Plaintiff "has committed to nurturing the respectful working environment that is essential to the success of all our athletics programs." *Id*., Ex. A. The March 25 article republished in full general manager Luck's public explanation for terminating Plaintiff. *Id*., Ex. F. And to the extent Plaintiff bases his claim on comments in the March 22 column that "[i]t's somewhat of a mystery exactly why he remained on the job" and that Plaintiff's "attitude displayed to compliance is a red flag," *Id*., Ex. E, those are statements of protected opinion. There is no liability for "statements of the speaker's subjective judgment." *Seelig v. Infinity Broad. Corp.*, 97 Cal. App. 4th 798, 810 (2002). Comments that Plaintiff's continued employment was a "mystery" and that the investigative findings were a "red flag" are

---

[7] Moreover, whether Plaintiff was found to have a targeted a half-dozen or "dozens" of women would not materially alter the gist of what ESPN reported.

MOTION TO DISMISS
Case No. 5:25-cv-06384-VKD

DAVIS WRIGHT TREMAINE LLP
350 S. GRAND AVE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90017-3847
(213) 633-6800
Fax: (213) 633-6899

1    quintessential statements of protected opinion by a sports analyst.  *See Okun v. Super. Ct.*, 29

2    Cal. 3d 442, 452 (1981) (*en banc*) (use of word "mysteriously" constituted opinion and

3    suggested writer "did not have knowledge of underlying reasons for the council's actions").

4          **C.      The Complaint Fails To Plausibly Plead Actual Malice.**

5          Under the First Amendment, public figures bear the strict burden of establishing that each

6    defendant acted with constitutional "actual malice."  *N.Y. Times Co. v. Sullivan*, 376 U.S. 254,

7    279-80 (1964).  Plaintiff is a quintessential public figure.

8          "Public figures for defamation purposes include, 'artists, athletes, business people,

9    dilettantes, anyone who is famous or infamous because of who he is or what he has done.'"

10   *Manzari v. Assoc. Newspapers Ltd.*, 830 F.3d 881, 888 (9th Cir. 2016).  The Supreme Court has

11   identified two kinds of public figures: (1) all-purpose public figures, who occupy "positions of

12   such persuasive power and influence that they are deemed public figures for all purposes," and

13   (2) limited-purpose public figures, who achieve their status by "thrust[ing] themselves to the

14   forefront of particular public controversies in order to influence the resolution of the issues

15   involved."  *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 345 (1974).  In the Ninth Circuit, the test

16   for a limited-purpose public figures considers: "whether (i) a public controversy existed when

17   the statements were made, (ii) whether the alleged defamation is related to the plaintiff's

18   participation in the controversy, and (iii) whether the plaintiff voluntarily injected itself into the

19   controversy for the purpose of influencing the controversy's ultimate resolution."  *Planet Aid,*

20   *Inc. v. Reveal*, 44 F.4th 918, 925 (9th Cir. 2022).

21         At the pleading stage, to determine whether Plaintiff is a limited-purpose public figure,

22   the Court considers "the allegations in the Complaint, attachments to the Complaint, and

23   information subject to judicial notice."  *Goldberg v. TeachBK, Inc.*, 2025 WL 296143, at *9

24   (N.D. Cal. Jan. 24, 2025).  Multiple courts considering Rule 12(b)(6) motions have held a

25   plaintiff to be a limited-purpose public figure based such material, including the contents of

26   media reports discussing the plaintiff.  *Makaeff v. Trump Univ., LLC*, 715 F.3d 254, 259 n.2 (9th

27   Cir. 2013) (court may properly take judicial notice of items reflecting plaintiff's public status to

28

19

DAVIS WRIGHT TREMAINE LLP
350 S. GRAND AVE, 27TH  FLOOR
LOS ANGELES, CALIFORNIA 90017-3847
(213) 633-6800
Fax: (213) 633-6899

1  determine public figure issue in defamation case).[8]

2      The Complaint on its face demonstrates that Plaintiff is, at the very least, a limited-

3  purpose public figure.  In addition to his status as former head football coach for one of the

4  country's most well-known universities, the Complaint alleges Plaintiff is a decorated collegiate

5  athlete, including ranking second on UC Berkeley's all-time leading passing list, Compl. ¶ 17;

6  that he spent two years in the NFL, *id.* ¶ 18; that he was named a NCAA Division 1 coach of the

7  year, *id.* ¶ 21; and that former Secretary of State Condoleezza Rice personally vouched for him

8  to be hired at Stanford.  *Id.* ¶ 16.  The Complaint also alleges that Plaintiff has spoken publicly

9  about coaching football, *id.* ¶ 24, and documents properly noticed confirm Plaintiff's

10  appointment as head coach, his record at Stanford, and his firing each were a matter of public

11  interest.  *See* concurrently filed Request for Judicial Notice at 1-3.

12      "Numerous courts," including the United States Supreme Court, "have concluded

13  professional and collegiate athletes and coaches are at least limited purpose public figures."

14  *McGarry v. Univ. of San Diego*, 154 Cal. App. 4th 97, 115 (2007).  Thus, for example, the

15  Supreme Court in *Curtis Publishing Co. v. Butts*, 388 U.S. 130 (1967) found that the athletic

16  director at the University of Georgia was a public figure by virtue of his position alone.  *Id.* at

17  147.  *See also Brewer v. Memphis Publ'g Co.*, 626 F.2d 1238, 1254-55 (5th Cir. 1980) (former

18  college athlete deemed limited public figure); *Falls v Sporting News Publ'g Co.*, 714 F. Supp.

19  843, 846-47 (E.D. Mich. 1989) ("sports figures are generally considered public figures because

20  of their position as athletes or coaches"); *Chuy v. Phila. Eagles Football Club*, 431 F. Supp. 254,

21  267 (E.D. Pa. 1977) (same for former professional football player); *Time, Inc. v. Johnston*, 448

22  F.2d 378, 380 (4th Cir. 1971) (professional basketball player limited-purpose public figure where

23  article questioned his conduct as a player).

24      *McGarry* is especially on point.  There, the court found that the head football coach at the

25  University of San Diego—a private college, like Stanford—was a limited-purpose public figure

26  and required to show actual malice for statements about the reasons he was fired.  154 Cal. App.

27  _____

28  [8] *See, e.g., Resolute Forest Prods. v. Greenpeace Int'l*, 302 F. Supp. 3d 1005, 1017 (N.D. Cal. 2017); *Biro v. Conde Nast*, 963 F. Supp. 2d 255, 270 (S.D.N.Y. 2013), *aff'd*, 622 F. App'x 67 (2d Cir. 2015).

MOTION TO DISMISS
Case No. 5:25-cv-06384-VKD

DAVIS WRIGHT TREMAINE LLP
350 S. GRAND AVE, 27TH  FLOOR
LOS ANGELES, CALIFORNIA 90017-3847
(213) 633-6800
Fax: (213) 633-6899

4th at 115.  The court expressly rejected the plaintiff's argument that "the position he held and the reasons for his employment termination did not involve a dispute affecting the general public or some segment of the general public in any appreciable way."  *Id.*  Likewise, in *Barry v. Time, Inc.*, 584 F. Supp. 1110 (N.D. Cal. 1984), the court found that a college basketball coach was a public figure.  The *Barry* court identified "a common thread" in cases with high-level athlete or coach plaintiffs: "that one's voluntary decision to pursue a career in sports, whether as an athlete or a coach, 'invites attention and comment' regarding his job performance and thus constitutes an assumption of the risk of negative publicity" meriting limited public figure status.  *Id.* at 1119.

As a public figure, Plaintiff must plead facts that could plausibly show "with clear and convincing evidence" that defendants "realized" that each statement "was false or … subjectively entertained serious doubt as to the truth" of each statement.  *Bose Corp. v. Consumers Union of U.S., Inc.*, 466 U.S. 485, 511 n.30 (1984).  There is a "'demanding burden' for pleading actual malice in defamation actions." *Wynn v. Chanos*, 75 F. Supp. 3d 1228, 1239 (2014) (dismissing complaint for failure to allege actual malice).  At a minimum, it requires "specific allegations that would support a finding that [the defendants] harbored serious subjective doubts as to the validity of [their] assertions."  *Id.  See also Resolute Forest Prods.*, 302 F. Supp. 3d at 1027-28 ("a claim may be dismissed for failing plausibly to allege actual malice without permitting discovery").  The court must "disregard the portions of the complaint where [Plaintiff] alleges in a purely conclusory manner that the defendants had a particular state of mind in publishing the statements …" *Id.* at 1018.  *See also Nicosia v. De Rooy*, 72 F. Supp. 2d 1093, 1099 (N.D. Cal. 1999) ("conclusory statements that [defendant] should have known the truth does not satisfy the heightened pleading standard") (citing *Bose*, 466 U.S. at 512-13).[9]

---

[9] Indeed, since the Supreme Court's decision in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), which also concerned the sufficiency of pleading a claim turning on the defendant's state of mind, numerous courts have dismissed defamation actions for failure to plead facts that could plausibly establish actual malice.  *E.g.*, *Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 702 (11th Cir. 2016); *Biro*, 807 F.3d at 544 (2d Cir. 2015); *Pippen v. NBC Universal Media, Inc.*, 734 F.3d 610, 614 (7th Cir. 2013); *Schatz v. Republican Leader State Leadership Comm.*, 669 F.3d 50, 58 (1st Cir. 2012); *Wynn*, 75 F. Supp. 3d at 1239; *Tull v. Higgins*, 2021 WL 6116971, at *9-10 (N.D. Cal. Dec. 27, 2021); *Nunes v. WP Co.*, 513 F. Supp. 3d 1, 7 (D.D.C. 2020), *aff'd*, 2022 WL 997826 (D.C. Cir. Apr. 1, 2022).

Considering the Complaint's factual allegations only, Plaintiff fails to plausibly plead actual malice. The principal alleged basis for actual malice is that the Articles' summaries of the two investigative reports are allegedly false, so Defendants must have known they were false. *E.g.*, Compl. ¶¶ 62 (alleging Defendants "knew that their statements about [Plaintiff] were false" because Defendants possessed "the investigatory reports, which contradict their false reporting"), 64 (similar). The statements are *not* false, as discussed above. *See* Section IV.A. But even if there could plausibly be some dispute about whether any of them were inaccurate, this argument conflates falsity and actual malice. *See Bose Corp.*, 466 U.S. at 511 (there is a "significant difference between proof of actual malice and mere proof of falsity").

For actual malice, the question is not whether it might be up for debate whether a statement was false. Rather, it is whether the ESPN journalists subjectively *believed* that their published descriptions of the investigative reports' contents were materially false. *See Tull*, 2021 WL 6116971, *9 (plaintiff "appears to conflate falsity with malice. He must allege falsity as an element of his defamation claim, but falsity alone does not establish actual malice"); *Kahl v. Bureau of Nat'l Affs.*, 856 F.3d 106, 116 (D.C. Cir. 2017) ("falsity alone does not equate to actual malice"). Indeed, by definition actual malice is only potentially relevant in a defamation case if there is some basis to dispute whether any statement at issue may be false. The mere possibility that documents, events, etc. might be subject to different interpretations does not equate to affirmative evidence that a defendant disbelieved the version of events it published. *E.g.*, *CACI Premier Tech. v. Rhodes*, 536 F.3d 280, 296 (4th Cir. 2008) (rational interpretation of documents that could be interpreted in more than one way does not give rise to actual malice).

Plaintiff's allegation that actual malice is shown because Defendants relied on anonymous sources is ill-advised. It is well-settled that "reliance on anonymous sources alone does not support an inference that the publisher acted with actual malice." *Cabello-Rondon v. Dow Jones & Co.*, 720 F. App'x 87, 89 (2d Cir. 2018). To the extent Plaintiff suggests these sources were unreliable, there were no facts pleaded to suggest that Defendants doubted their reliability. To the contrary, the brief quotations in the March 19 article from a couple of anonymous sources merely reiterate the gist of what the two investigative reports found.

22

DAVIS WRIGHT TREMAINE LLP
350 S. GRAND AVE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90017-3847
(213) 633-6800
Fax: (213) 633-6899

Similarly, Plaintiff's vague criticisms that the Articles were "organize[d] … in a misleading way … that amplified the allegations and made them difficult to parse" and claim that their tone was "gratuitous" and "gossipy" likewise is irrelevant to actual malice. Compl. ¶ 65. *E.g., Reader's Dig. Ass'n v. Super. Ct.*, 37 Cal. 3d 244, 259 (1984) (for actual malice purposes, "[s]o long as [a defendant had] no serious doubts concerning its truth, he can present but one side of the story"); *Paterno v. Super. Ct.*, 163 Cal. App. 4th 1342, 1353 (2008) (finding reporter had no "obligation to incorporate [plaintiff's] press releases or its talking points into her magazine article"; "There is no constitutional mandate requiring the press to adopt a 'he said, she said' style of reporting").

Moreover, the Complaint pleads facts that suggest the *absence* of malice. For example, Plaintiff alleges that ESPN did not give him much time to comment. Compl. ¶ 67. But courts hold that a failure to request comment *at all* from a plaintiff does not establish actual malice. *See, e.g., McCafferty v. Newsweek Media Grp.*, 955 F.3d 352, 359-60 (3d Cir. 2020); *Jankovic v. Int'l Crisis Grp.*, 822 F.3d 576, 594-95 (D.C. Cir. 2016). Here, the Articles prominently feature comments from Plaintiff. If anything, this supports the absence of malice. *E.g., Shahid Buttar for Cong. Comm. v. Hearst Commc'ns*, 2022 WL 1215307, at *10 (N.D. Cal. Apr. 25, 2022) (no actual malice where defendant "sought comment from the accused" and "repeatedly published the accused's denial of the allegations"); *Michel v. NYP Holdings*, 816 F.3d 686, 703 (11th Cir. 2016) (Where "the publisher includes information contrary to the general conclusions reached in an article, that showing tends to undermine the claims of malice.").

Finally, the Complaint alleges that actual malice is shown because "Defendants' accusations against Taylor" are "inherently improbable." Compl. ¶ 63. No facts are pleaded to support that conclusory allegation. Nor is it "inherently improbable" that a coach (or any other leader) might engage in gender-based misconduct, or that a major college sports program might be reluctant to terminate a head coach. In any event, the source of the "accusations" at issue are the two investigative reports, not Defendants, and there is nothing "improbable" about them. Plaintiff's failure to meet his burden of plausibly pleading actual malice requires the Complaint to be stricken.

MOTION TO DISMISS
Case No. 5:25-cv-06384-VKD

DAVIS WRIGHT TREMAINE LLP
350 S. GRAND AVE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90017-3847
(213) 633-6800
Fax: (213) 633-6899

1

## V.    CONCLUSION

2      For the foregoing reasons, Defendants respectfully ask the Court to dismiss Plaintiff's

3   Complaint in its entirety with prejudice.

4   DATED: October 3, 2025                    DAVIS WRIGHT TREMAINE LLP
                                              NATHAN SIEGEL (*pro hac vice* pending)
5                                             CYDNEY SWOFFORD FREEMAN
                                              SARAH E. BURNS
6

7                                             By: /s/      *Cydney Swofford Freeman*
                                                      Cydney Swofford Freeman
8
                                              Attorneys for Defendants
9                                             ESPN, INC. AND XUAN THAI

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MOTION TO DISMISS
Case No. 5:25-cv-06384-VKD

DAVIS WRIGHT TREMAINE LLP
350 S. GRAND AVE, 27TH  FLOOR
LOS ANGELES, CALIFORNIA 90017-3847
(213) 633-6800
Fax: (213) 633-6899