Paul B. Salvaty (State Bar No. 171507)
Email: psalvaty@cohen-williams.com
Marc S. Williams (State Bar No. 198913)
Email: mwilliams@cohen-williams.com
COHEN WILLIAMS LLP
724 South Spring Street, 9th Floor
Los Angeles, CA 90014
Telephone: (213) 232-5160
Facsimile: (213) 232-5167

Attorneys for PLAINTIFF
TROY TAYLOR

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| TROY TAYLOR,<br><br>  Plaintiff,<br><br>  v.<br><br>ESPN INC., and XUAN THAI,<br><br>  Defendants. | Case No. 5:25-cv-06384-VKD<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANTS' SPECIAL MOTION TO STRIKE PLAINTIFF'S COMPLAINT**<br><br>Judge:  Hon. Virginia K. DeMarchi<br>Date:   December 2, 2025<br>Time:   10:00 a.m.<br>Place:  Courtroom 2 |

# TABLE OF CONTENTS

I. INTRODUCTION ........................................................................................................... 1

II. LEGAL STANDARD ..................................................................................................... 1

    A. Ninth Circuit Law Governing Anti-SLAPP Motions ......................................... 1

    B. Elements of Defamation ..................................................................................... 3

III. ARGUMENT ................................................................................................................... 3

    A. The Challenged Statements Are, at the Very Least, Susceptible to a Defamatory Interpretation. ..................................................................................................... 3

    B. Taylor Should Not Be Required to Plead Actual Malice Because Defendants Have Not Shown Him to Be a Limited Purpose Public Figure. ..................................... 4

    C. Even If Taylor Were a Limited Purpose Public Figure, the Complaint Adequately Pleads Actual Malice. ......................................................................................... 6

    D. When Considering the Anti-SLAPP Motion, the Court Should Refuse to Consider Defendants' Extrinsic Evidence, or Allow Discovery. ....................................... 7

IV. CONCLUSION ................................................................................................................ 8

# TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ................................................................................................................ 2

*Barger v. Playboy Enters.*,
    564 F. Supp. 1151 (N.D. Cal. 1983) ........................................................................................ 3

*Barker v. Fox & Assocs.*,
    240 Cal. App. 4th 333 (2015) ................................................................................................... 3

*Barry v. Time Inc.*,
    584 F. Supp. 1110 (N.D. Cal. 1984) ........................................................................................ 5

*CoreCivic, Inc. v. Candide Grp., LLC*,
    46 F.4th 1136 (9th Cir. 2022) ............................................................................................. 1, 2

*Flowers v. Carville*,
    310 F.3d 1118 (9th Cir. 2002) ................................................................................................. 6

*Gertz v. Robert Welch, Inc.*,
    418 U.S. 323 (1974) ................................................................................................................ 5

*Goldberg v. TeachBK Inc.*,
    2025 WL 296143 (N.D. Cal. Jan. 24, 2025) ............................................................................ 5

*Herring Networks, Inc. v. Maddow*,
    8 F.4th 1148 (9th Cir. 2021) .................................................................................................... 3

*Hutchinson v. Proxmire*,
    443 U.S. 111 (1979) ................................................................................................................ 5

*Khoja v. Orexigen Therapeutics*,
    899 F.3d 988 (9th Cir. 2018) ................................................................................................... 7

*Makaeff v. Trump Univ. LLC*,
    715 F.3d 254 (9th Cir. 2013) ......................................................................................... 1, 2, 3, 5

*Mandel v. Hafermann*,
    503 F. Supp. 3d 946 (N.D. Cal. 2020) ..................................................................................... 1

*Manzari v. Associated Newspapers*,
    830 F.3d 881 (9th Cir. 2016) ................................................................................................... 2

*Masson v. New Yorker Magazine, Inc.*,
    501 U.S. 496 (1991) ................................................................................................................ 6

*McGarry v. Univ. of San Diego,*
  154 Cal. App. 4th 97 (2007) .................................................................................................. 4, 5

*Metabolife Int'l, Inc. v. Wornick,*
  264 F.3d 832 (9th Cir. 2001) .............................................................................................. 1, 2, 6

*Mindys Cosmetics, Inc. v. Dakar,*
  611 F.3d 590 (9th Cir. 2010) ..................................................................................................... 2

*N.Y. Times Co. v. Sullivan,*
  376 U.S. 254 (1964) .................................................................................................................. 3

*Nicosia v. De Rooy,*
  72 F. Supp. 2d 1093 (N.D. Cal. 1999) ...................................................................................... 6

*Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress,*
  890 F.3d 828 (9th Cir. 2018) ................................................................................................. 2, 7

*Reader's Digest Ass'n v. Super. Ct.,*
  37 Cal.3d 244 (1984) ................................................................................................................ 5

*Solano v. Playgirl, Inc.,*
  292 F.3d 1078 (9th Cir. 2002) .................................................................................................. 4

*Summit Bank v. Rogers,*
  206 Cal. App. 4th 669 (2012) ................................................................................................... 3

*Taus v. Loftus,*
  40 Cal. 4th 683 (2007) .............................................................................................................. 3

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.,*
  551 U.S. 308 (2007) .................................................................................................................. 3

*Todd v. Lovecruft,*
  No. 19-cv-01751, 2020 WL 60199 (N.D. Cal. Jan. 6, 2020) .................................................... 3

*Wynn v. Chanos,*
  75 F. Supp. 3d 1228 (2014) ...................................................................................................... 6

**Rules**

Fed. R. Civ. P. 12 ............................................................................................................................. 2, 7

Fed. R. Civ. P. 56 ................................................................................................................................. 7

Fed. R. Civ. P. 8 ................................................................................................................................... 7

## I. INTRODUCTION

The anti-SLAPP motion to strike filed by Defendants ESPN Inc. ("ESPN") and Xuan Thai ("Thai") raises the same arguments as Defendants' Rule 12(b)(6) motion, and it fails for the same reasons. Plaintiff Troy Taylor's ("Taylor") defamation claim is not, as Defendants suggest, a "SLAPP" "masquerading as an ordinary lawsuit." It is a legitimate defamation action arising from Defendants' false reporting about the leaked contents of Taylor's confidential personnel file, which led directly to Taylor being fired as Stanford's Head Football Coach. The Complaint includes detailed factual allegations showing that Defendants' reporting was false and that Defendants knew it was false or acted with reckless disregard for the truth. At this stage, Taylor has shown that his claim has far more than the "minimal merit" needed to survive an anti-SLAPP motion. Accordingly, Defendants' anti-SLAPP motion should be denied.

## II. LEGAL STANDARD

### A. Ninth Circuit Law Governing Anti-SLAPP Motions

"California law provides for the pre-trial dismissal of certain actions, known as Strategic Lawsuits Against Public Participation, or SLAPPs, that masquerade as ordinary lawsuits but are intended to deter ordinary people from exercising their political or legal rights or to punish them for doing so." *Makaeff v. Trump Univ. LLC*, 715 F.3d 254, 261 (9th Cir. 2013) (citations and internal quotations omitted). The Ninth Circuit has held that aspects of California's anti-SLAPP statute apply in federal diversity actions. *CoreCivic, Inc. v. Candide Grp., LLC*, 46 F.4th 1136, 1143 (9th Cir. 2022); *Metabolife Int'l, Inc. v. Wornick*, 264 F.3d 832, 846 (9th Cir. 2001). Courts employ a two-step test in evaluating whether to grant a defendant's anti-SLAPP motion. First, the moving defendant must make a "prima facie showing that the plaintiff's suit arises from an act in furtherance of the defendant's constitutional right to free speech." *Makaeff*, 715 F.3d at 261 (citation omitted). "At step one, a court primarily reviews the complaint, but also papers filed in opposition to the motion to the extent that they might give meaning to the words in the complaint." *Mandel v. Hafermann*, 503 F. Supp. 3d 946, 960–61 (N.D. Cal. 2020) (cleaned up). If the court finds that the defendant has made a prima facie showing that plaintiff's suit arises from conduct in furtherance of the defendant's free speech rights, at the second step, the burden then shifts to the plaintiff "to establish a reasonable probability that it will prevail on its claim." *Makaeff*, 715 F.3d at 261.

"'Reasonable probability' in the anti-SLAPP statute has a 'specialized meaning.'" *Manzari v. Associated Newspapers,* 830 F.3d 881, 887 (9th Cir. 2016). "The statute requires only a minimum level of legal sufficiency and triability." *Id.* Often called the 'minimal merit prong,' the claimant "need only state and substantiate a legally sufficient claim." *Mindys Cosmetics, Inc. v. Dakar,* 611 F.3d 590, 598–599 (9th Cir. 2010) (cleaned up). Put differently, "the plaintiff must demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain favorable judgment if the evidence submitted by the plaintiff is credited." *Id.* at 599 (citation omitted). At this point, courts "[do] not weigh the credibility or comparative probative strength of competing evidence," rather courts should only grant the motion if "no reasonable jury could find for the [claimant]." *Id.* (citation omitted).

There are significant differences between how federal and state courts approach anti-SLAPP motions. In state court, a claim must be dismissed if the "plaintiff presents an insufficient legal basis for it, or if, on the basis of the facts shown by the plaintiff, 'no reasonable jury could find for the plaintiff.'" *Makaeff,* 715 F.3d at 261(*quoting Metabolife v. Wornick*, 264 F.3d at 840). This approach, however, is inconsistent with the Federal Rules of Civil Procedure because it allows for the dismissal of claims for factual insufficiency before discovery has been conducted. The Ninth Circuit, therefore, has crafted separate procedures for ruling on anti-SLAPP motions that challenge legal deficiencies of a claim and those that challenge factual deficiencies of a claim:

> [W]hen an anti-SLAPP motion to strike challenges only the legal sufficiency of a claim, a district court should apply the Federal Rule of Civil Procedure 12(b)(6) standard and consider whether a claim is properly stated. And, on the other hand, when an anti-SLAPP motion to strike challenges the factual sufficiency of a claim, then the Federal Rule of Civil Procedure 56 standard will apply. But in such a case, discovery must be allowed, with opportunities to supplement evidence based on the factual challenges, before any decision is made by the court. A contrary reading of these anti-SLAPP provisions would lead to the stark collision of the state rules of procedure with the governing Federal Rules of Civil Procedure while in a federal district court.

*Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 890 F.3d 828, 834 (9th Cir. 2018), *amended,* 897 F.3d 1224 (9th Cir. 2018). "Under the familiar [Rule 12(b)(6)] plausibility pleading analysis, 'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face'" to survive an anti-SLAPP motion. *CoreCivic*, 46 F.4th at 1143 (*quoting Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). As for a 12(b)(6) motion, federal courts ruling on anti-SLAPP

motions challenging the legal sufficiency of a claim "may consider the complaint in its entirety, as well as … documents incorporated into the complaint by reference, and matters of which a court may take judicial notice[,]" but not other extrinsic evidence. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *see Herring Networks, Inc. v. Maddow*, 8 F.4th 1148, 1155-56 (9th Cir. 2021).

### B.  Elements of Defamation

"Pursuant to California law, defamation involves the intentional publication of a statement of fact which is false, unprivileged, and has a natural tendency to injure or which causes special damage." *Id.* at 1157 (quotations omitted); *see Makaeff*, 715 F.3d at 264; *Taus v. Loftus*, 40 Cal. 4th 683, 720 (2007) ("The tort of defamation involves (a) a publication that is (b) false, (c) defamatory, and (d) unprivileged, and that (e) has a natural tendency to injure or that causes special damage."). Statements are defamatory per se if the "defamatory meaning appears from the language itself without the necessity of explanation[.]" *Todd v. Lovecruft*, No. 19-cv-01751, 2020 WL 60199, at *15 (N.D. Cal. Jan. 6, 2020). Statements are defamatory per quod when the "defamatory language […] is not libelous on its face[;]" plaintiffs alleging defamation per quod must prove and plead special damages. *Id.*; *see Barker v. Fox & Assocs.*, 240 Cal. App. 4th 333, 352 (2015). The allegedly defamatory statements must be "of and about" the party that claims they have been defamed. *See Barger v. Playboy Enters.*, 564 F. Supp. 1151, 1153 (N.D. Cal. 1983). When the plaintiff is a public figure, the plaintiff must also prove that the allegedly defamatory statements were made with actual malice. *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 280 (1964).

### III.  ARGUMENT

#### A.  The Challenged Statements Are, at the Very Least, Susceptible to a Defamatory Interpretation.

Contrary to Defendants' arguments, the Complaint identifies with specificity the false statements made by Defendants in their reporting and provides a detailed explanation for why each challenged statement is false. (*See* Compl. ¶¶ 52-57, Exs. A, B, E-G.) The Complaint also pleads specific facts to suggest not only that the false statements were susceptible to a defamatory interpretation, but that they were understood by the public to have a defamatory meaning. Once it is determined that a particular statement is susceptible to a defamatory interpretation, then it "become[s] a question for the trier of fact whether or not it was so understood." *Summit Bank v. Rogers*, 206 Cal. App. 4th 669, 696 (2012), *quoting*

*Smith v. Maldonado*, 72 Cal. App. 4th 637, 647 (1999); *see also Solano v. Playgirl, Inc.*, 292 F.3d 1078, 1084 (9th Cir. 2002) ("[O]ur inquiry is not to determine whether the publication may have an innocent meaning but rather to determine if it reasonably conveys a defamatory meaning.")

Defendants do not claim the challenged statements are literally true; nor would such an argument be possible, given the facts on which their reporting was based. Instead, they claim the challenged statements were "substantially true" because the "gist" of the articles supposedly aligns with the investigatory findings. But the actual "gist" of Defendants' reporting was that two separate investigations by two different investigators "found" that Taylor engaged in widespread and pervasive bullying, aggressive, hostile and otherwise discriminatory conduct targeted at female staff. The reports themselves prove otherwise.

The first investigation's primary finding was there was "insufficient evidence" to find that Taylor had requested to replace a football administrator based on her gender. The first investigations contained no findings of bullying; no findings of "belittling" toward female staff; and even the finding about the football "culture" applied equally "to anyone, regardless of gender, who cannot dedicate unrestricted time to the program." In addition, Defendants' statements that the investigations "began after multiple employees filed complaints against Taylor for what they called hostile and aggressive behavior, as well as personal attacks" is completely made up. Thus, the "gist" of the articles was contradicted by the facts which Defendants had in hand at time of their reporting.

Defendants' "substantial truth" defense boils down to an argument that their inaccurate statements, when read in the light most favorable to Defendants, may be susceptible to an innocent interpretation. But this argument is neither appropriate nor sufficient at the pleading stage of the case. Here, there is no question (and Defendants do not seriously dispute) that, at the very least, the challenged statements are susceptible to a defamatory meaning. For this reason alone, the question of "substantial truth" must go to the jury, and Defendants' anti-SLAPP motion must be denied.

**B. Taylor Should Not Be Required to Plead Actual Malice Because Defendants Have Not Shown Him to Be a Limited Purpose Public Figure.**

In their anti-SLAPP motion, Defendants dispute Taylor's allegation that he is a "private citizen," citing *McGarry v. Univ. of San Diego,* 154 Cal. App. 4th 97 (2007), for support. But as discussed in

Taylor's opposition to Defendants' Rule 12(b)(6) motion, there is no legal basis for finding Taylor to be a public figure based solely on his status as Stanford's former head football coach.

The Ninth Circuit has articulated a three-prong test to determine whether any individual or entity is a limited-purpose public figure:

> In undertaking this inquiry, we consider whether (i) a public controversy existed when the statements were made, (ii) whether the alleged defamation is related to plaintiff's participation in the controversy, and (iii) whether the plaintiff voluntarily injected itself into the controversy for the purpose of influencing the controversy's ultimate resolution.

*Makaeff,* 715 F.3d 254, 266 (citation omitted). When analyzing this issue at the pleading stage, "the Court considers only the allegations in the Complaint, attachments to the Complaint, and information subject to judicial notice." *Goldberg v. TeachBK Inc.*, 2025 WL 296143, at *6 (N.D. Cal. Jan. 24, 2025).

Defendants admit this three-part test applies to the question of Taylor's public figure status, but they make no real effort to show it is satisfied in this case. In truth, the test cannot be satisfied because the public controversy over whether Stanford should fire Taylor was manufactured by Defendants when they reported about the leaked contents of his personnel file. *See Makaeff*, 715 F.3d at 267; *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 351 (1974); *see also Reader's Digest Ass'n v. Super. Ct.*, 37 Cal.3d 244, 254 (1984). At the time, "the two workplace investigations had been completed approximately fifteen months and eight months, respectively, before the March 19 article was published, and both Stanford and Taylor had acknowledged the results of the investigations and moved on." (Compl. ¶ 26.) *See, e.g., Hutchinson v. Proxmire*, 443 U.S. 111, 135 (1979) ("Clearly, those charged with alleged defamation cannot, by their own conduct, create their own defense by making the claimant a public figure.")

None of Defendants' cases suggest Taylor should be deemed a limited-public figure where, as here, the *Makaeff* test (based on *Gertz*) cannot be met. As for *McGarry,* it is not controlling and, regardless, is distinguishable because it arose *after* the plaintiff had been terminated. The public controversy there, unlike here, predated Defendants' false reporting. *McGarry,* 154 Cal. App. 4th at 110 (at time of reporting, "his employment termination was already a topic of widespread public interest"); *see also Barry v. Time Inc.*, 584 F. Supp. 1110, 1117-19 (N.D. Cal. 1984) (finding pre-existing public controversy and "sufficient thrust" for limited public figure status).

### C. Even If Taylor Were a Limited Purpose Public Figure, the Complaint Adequately Pleads Actual Malice.

Defendants present no additional argument on actual malice beyond that contained in their Rule 12(b)(6) motion. As discussed in Taylor's opposition to that motion, the allegations here are more than sufficient to support a finding that Defendants published their false statements with knowledge of falsity or reckless disregard of the truth.

Defendants had the investigative reports at the time of their false statements. On that basis alone, a jury could reasonably conclude Defendants intentionally manufactured or at least misrepresented the findings for the purpose of painting Taylor in a defamatory light. *See Masson v. New Yorker Magazine, Inc.,* 501 U.S. 496, 513 (1991).

Furthermore, the Complaint includes detailed factual allegations of other circumstantial evidence indicating that Defendants acted with the requisite intent. For example, the Complaint alleges that Defendants (1) relied on anonymous sources who provided quotes that purported to bolster the false aspects of their reporting (Compl. ¶ 65); (2) repeated the falsehoods—and continue to repeat them to this day—after being alerted that their reporting is inaccurate and unfair (Compl. ¶ 64); (3) used editorial techniques such as juxtaposing the findings of the two reports, as well as juxtaposing findings with unsubstantiated allegations, to paint a false picture and support a false narrative (Compl. ¶ 65); (4) failed to take reasonable steps to hear Taylor's side of the story before launching their campaign, despite having time to do so (Compl. ¶ 67); and (5) covered Taylor's public response in a misleading manner, which elevated the reliability of their own reporting because they (unlike Taylor) had the leaked reports (Compl. ¶ 66).

None of Defendants' authorities even remotely suggest that specific factual allegations of actual malice such as these are insufficient at this early stage of the case. *Compare Wynn v. Chanos*, 75 F. Supp. 3d 1228, 1239 (2014) (dismissal where plaintiff "merely recite[d] an element of slander") and *Nicosia v. De Rooy*, 72 F. Supp. 2d 1093, 1099 (N.D. Cal. 1999) (allegations of economic interest and animus not sufficient) *with Flowers v. Carville*, 310 F.3d 1118, 1131 (9th Cir. 2002), *quoting Metabolife Int'l, Inc. v. Wornick*, 264 F.3d 832, 848 (9th Cir. 2001) ("For that reason, when a complaint is sufficiently pled, 'the

issue of "actual malice" . . . cannot be properly disposed of by motion to dismiss,' where the plaintiff has had no opportunity to present evidence in support of his allegations.")

### D. When Considering the Anti-SLAPP Motion, the Court Should Refuse to Consider Defendants' Extrinsic Evidence, or Allow Discovery.

Defendants claim that their anti-SLAPP motion challenges only the "legal sufficiency" of the Complaint, and, therefore, should be analyzed under the Rule 12(b)(6) motion standard. However, as discussed in Taylor's opposition to their Rule 12(b)(6) motion, Defendants rely heavily on non-public extrinsic evidence to which Taylor did not have access before he filed suit.

Defendants refused Taylor's prelitigation request to provide him with copies of the reports on the grounds that they were "non-public." Yet now they claim that the reports were incorporated by reference into the Complaint, and that they should be considered to "prevent Plaintiff from misrepresenting the document[s]." *See* Defendants' Rule 12(b)(6) Motion at 5, n.4. Defendants cite no authority for applying the incorporation-by-reference doctrine under these circumstances, and doing so would be manifestly unfair. The findings of the reports are consistent with the allegations of the Complaint, but Defendants seek to use the reports to "insert their own version of events into the complaint to defeat otherwise cognizable claims." *See Khoja v. Orexigen Therapeutics*, 899 F.3d 988, 1003 (9th Cir. 2018) ("Although the incorporation-by-reference doctrine is designed to prevent artful pleading by plaintiffs, the doctrine is not a tool for defendants to short-circuit the resolution of a well-pleaded claim.") If the Court is inclined to consider the reports in connection with Defendants' anti-SLAPP motion, then Taylor requests an opportunity to conduct discovery as he is entitled to do under Fed. R. Civ. P. 56. *See, e.g., Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, *supra.,* 890 F.3d at 833 ("If a defendant makes an anti-SLAPP motion to strike founded on purely legal arguments, then the analysis is made under Fed. R. Civ. P. 8 and 12 standards; if it is a factual challenge, then the motion must be treated as though it were a motion for summary judgment and discovery must be permitted.")

///

///

///

IV. **CONCLUSION**

For the foregoing reasons, Defendants' anti-SLAPP motion to strike should be denied.

Dated: November 3, 2025          **COHEN WILLIAMS LLP**

By: _____/s/ Paul B. Salvaty_____
Paul B. Salvaty
Marc S. Williams
Attorneys for Plaintiff Troy Taylor